## ROLANDO v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 31, 1924.)

No. 6347.

**1. Indictment and information ☞125(14)—Information charging sale of pint of wine and two drinks of whisky held not duplicitous.**

Information charging sale of one pint of wine and two drinks of whisky to named person, for which such person paid defendant specified sum, was not subject to demurrer or motion to quash on ground of duplicity; the presumption from the charge as found in information being that there was one sale of two liquors.

**2. Indictment and information ☞125(14)—Facts held to show two distinct offenses.**

Testimony that prosecuting witness asked defendant for two drinks of whisky for himself and companion, and later asked for and received a bottle of wine, *held* to prove two separate offenses.

**3. Indictment and information ☞71, 125(2)—Charge must be definite, certain, and single.**

The charge on which a defendant is tried should be definite, certain, and single.

**4. Criminal law ☞1035(3)—Failure to require prosecution to elect or instruct jury to specify offense held not available, in absence of motion or request.**

In prosecution for selling liquor in violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), in which the evidence proved two distinct sales, court's failure to require prosecution to elect as to sale or to instruct jury to specify offense of which defendant was found guilty, *held* not available to defendant after return of general verdict, in absence of motion for election or request for such instruction.

**5. Criminal law ☞459—Witness who gave opinion as to liquor held qualified.**

Witness who had had only 2½ months' experience in tasting and smelling liquor, but who stated that he had trained himself to know the taste and smell of different kinds of liquor, *held* qualified to testify that liquor tasted by him was moonshine whisky; the credibility of the witness and the weight of his testimony being for the jury.

**6. Criminal law ☞459—Witness familiar with taste of alcoholic liquors may testify as to liquor he has tasted.**

A witness who is familiar with the taste of alcoholic liquors may give opinion whether liquid which he has tasted is intoxicating liquor of a certain name.

In Error to the District Court of the United States for the District of Utah; Page Morris, Judge.

James Rolando was convicted of selling intoxicating liquor, and he brings error. Affirmed.

Charles M. Morris, U. S. Atty., and Edward M. Morrissey, Asst. U. S. Atty., both of Salt Lake City, Utah.

Before SANBORN and LEWIS, Circuit Judges, and SCOTT, District Judge.

LEWIS, Circuit Judge. Plaintiff in error was tried, convicted and sentenced to four months imprisonment on an information that charged him with willfully, knowingly and unlawfully selling to Robert N. Cooper on December 22, 1922, one pint and two drinks of intoxicating liquor, to-wit, one pint of wine and two drinks of whiskey for beverage purposes, for which said intoxicating liquor the said Robert N. Cooper paid to the said James Rolando the sum of $1.00, and that he, the said James Rolando, then and there well knew the same to be intoxicating liquor; the said sale being made upon those certain premises designated and known as the California Bar in the Town of Bingham, Salt Lake County, District of Utah, all in violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.).

Cooper testified that he was Federal Prohibition Agent, that he went to the California Bar on June 22, 1922, with a friend, Mr. Speakman, and called for two drinks of whiskey, and defendant said he had no whiskey, he had wine. Cooper said, "Well, we'll take some wine, then," and defendant poured out two small glasses of wine and set it on the counter, that it looked like wine and he and Speakman drank it and paid twenty cents a glass for it. Cooper then again asked for whiskey, and defendant said, "I guess you are all right, I'll give you some whiskey." Defendant then poured out two small glasses and charged two bits a drink for it. Cooper took a taste of his glass. It did not taste very good, so he poured it in the spittoon under the bar. Speakman drank his. Then Cooper asked for a bottle of wine and defendant, without asking any questions, went to the ice box and poured out a pint of wine. Cooper took the bottle. A few days later he took it to Salt Lake City, put a seal over the cork, it was put in a vault and remained there until January 12, 1923, when it was analyzed by the State chemist. Cooper further testified that the glass which he tasted and then poured in the spittoon was moonshine whiskey, that he had then had about two and a half months' experience in the taste and smell of whiskey, that all that any one needed was about a week's experience, that he thought anybody of ordinary intelligence could in the course of a month learn the smell and detect the taste of moonshine, that Mr. Speakman drank his glass and it was moonshine whiskey. The defendant objected and excepted to the testimony of Cooper giving his opinion as to the contents of the glass which he tasted. Speakman did

not testify. The State chemist testified that his analysis of the bottle of wine, made about six and a half months after it was put in the vault, disclosed that it contained 9.2 per cent. by volume of alcohol; that it was a fermented alcoholic liquor made from grapes, commonly known as Dago Red or ordinary grape wine, that after a liquid of that kind is sealed up the process of fermentation will go on to a certain extent, but that the absence of gas or air will prevent fermentation to a certain extent; that in his judgment the alcoholic content was more than 9 per cent. by volume at the time it was placed in the bottle, provided it had not been opened at intervals; that grape juice when freshly made does not contain any alcoholic content but has the ingredients that, if kept under proper conditions, will develop the alcoholic content; that if you place grape juice in a warm condition, or at least where the temperature is what you might term warm, it would start a process of fermentation, provided access of air is present; that the extent of fermentation depends upon the amount of air that it receives. When the bottle was opened there was an expulsion of gas; that air will penetrate through an old cork much more rapidly than through a new cork; that he had seen instances where the air got through the sealing wax where the seal was not put on properly. This seal had been put on properly, and he thought no air could get in or out. When the seal was punctured and the cork removed the expulsion of gas took place with great force; that his analysis would have been a fairer one if it had been made when the bottle was obtained; that if sugar had been added fermentation would have gone on without much access of air; that if there had been no fermentation at the time it was sealed up he would not expect to find alcoholic content from pure grape juice, if it had been properly bottled, sealed and sterilized; that if it had been manufactured as a grape juice and not bottled at once he would expect to find alcohol at the end of twenty-four hours in the proportion may be of only one-half or three-quarters of 1 per cent., but at the end of two days with warm temperature, like in June, he would expect to find at least 3 or 4 per cent. of alcohol. With an ordinary grape juice exposed to the air the alcoholic content increases rapidly from day to day until it reaches about 14 to 16 per cent., then fermentation stops, and if it is thereafter exposed to air the alcohol is converted into vinegar.

Rolando testified that he did not sell Cooper two drinks of moonshine whiskey; that he did not have and never had whiskey in his place at the California Bar; that he did not sell Cooper wine, had no recollection of doing so; that Cooper came into his place, walked back of the bar, looked at his Government license as a soft drink dealer, asked him if that was his name, Rolando said yes, Cooper said all right, and then walked out; that he did sell unfermented wine and was careful in keeping it in a cool place so it would not ferment; that he had been in business at that place since 1919 and had never before been arrested for selling intoxicating liquor, either by the city or the state, or anybody else; that if unfermented grape juice is kept in a warm place it will begin to ferment and the alcoholic content will increase; that he makes a fruit juice and also buys it in large quantities, sometimes gets a hundred gallons at a time from San Francisco in tin cans and wooden barrels, and at times has some he makes himself; that he never told Cooper he would sell him whiskey; that he did not have whiskey and that if Cooper got any wine from him it was nothing more than unfermented grape juice; that was all he kept at his place of business. The question whether the defendant sold Cooper whiskey rested entirely on the testimony of Cooper and the defendant, without any corroborating circumstances. Cooper said that he asked for whiskey, that the defendant sold him the two glasses as whiskey, that he did not drink his glass but tasted it, and that in his judgment, based on two and a half months' experience, it was moonshine whiskey. The defendant said he never had any moonshine whiskey at his place, he had never sold any moonshine whiskey, Cooper did not ask for whiskey, and he did not sell him anything as moonshine whiskey. There is nothing in the record from which we can ascertain whether or not the jury found that the defendant sold whiskey as charged. The jury may have so found, it may not have so found. Its verdict of guilty may have rested solely on a finding that defendant sold Cooper moonshine whiskey, or it may have rested solely on a finding that defendant sold Cooper the bottle of wine, and when he sold it it was intoxicating liquor containing more than one-half of 1 per cent. by volume of alcohol. The verdict is a general verdict finding the defendant guilty as charged in the information.

[1, 2] From the charge, as it is found in the information, there was, presumptively, one sale of the two liquors; and the objec-

tion to it as duplicitous did not appear upon the face of the information. Therefore, it could not be attached by demurrer or motion to quash. From the proof offered by the prosecution there were two separate sales, first, the two drinks of moonshine whiskey, then later the pint bottle of wine; and the defendant cannot know of which he was convicted, or if of both. Cooper testified that he asked for whiskey, that defendant poured out two small glasses of what is supposed to be whiskey and charged two bits a drink for it. He tasted his glass and then poured it in the spittoon. The other man drank his. Then Cooper asked him for a bottle of wine and the defendant got that for him. They were as much separate transactions as if they had occurred on different days, and, if true, constituted two different offenses. 1 Wharton on Criminal Law, § 382, says a count in an indictment which charges two distinct offenses is bad, and the defendant, on a motion to quash or demurrer, can defeat it; and at section 395:

"Duplicity in criminal cases, may be objected to by special demurrer, perhaps by general demurrer, or the court in general, upon application, will quash the indictment; but the better view is that it cannot be made the subject of a motion in arrest of judgment, or of a writ of error; and it is cured by a verdict of guilty as to one of the offenses, and not guilty as to the other."

[3, 4] But this information was not subject on its face to challenge, and the court permitted a general verdict of "guilty as charged in the information herein." The law guarantees to every defendant that the charge upon which he is tried shall be definite, certain and single. The defect here might have been cured by requiring an election, or by direction that the verdict be special,—specifying the offense of which he was found guilty; but it was not. These errors in the progress of the trial could have been avoided, and doubtless would have been, if they had been called to the attention of the court at the time. The defendant withheld moving for an election by the district attorney at the close of the evidence in behalf of the prosecution, and did not request at the close of all of the evidence that the court instruct the jury that it could not find the defendant guilty of but one of the offenses charged, and if it should so find it would state in its verdict which offense, and acquit him of the other. Having so failed, no error was committed by the court of which defendant can here complain.

[5, 6] It cannot be denied that Mr Cooper was not an experienced taster and smeller of liquors. He stated that he had only had two and a half months' experience in that line, but he further stated that he had trained himself to know the taste and smell of different kinds of liquor, and that the liquor which he tasted in the glass while standing at the bar was moonshine whiskey. That was his opinion. A witness who is familiar with the taste of alcoholic liquors may give his opinion whether a liquid which he has tasted is intoxicating liquor of a certain name. Lewinsohn v. U. S. (C. C. A.) 278 Fed. 421, 426; Albert v. U. S. (C. C. A.) 281 Fed. 511, 513; Strada v. U. S. (C. C. A.) 281 Fed. 143, 145; Sabutis v. U. S. (C. C. A.) 270 Fed. 209, 210; Singer v. U. S. (C. C. A.) 278 Fed. 415. The credibility of this witness and the weight of his testimony was a matter solely for the jury, and the court did not err in admitting his evidence.

There were no objections or exceptions to the court's instructions, and none was requested by defendant. We find no reversible error saved by the defendant, and the judgment is

Affirmed.