**UNITED STATES of America, Plaintiff,**

v.

**Elmer Curtiss TURBYFILL, Defendant.**

**Crim. A. No. 24049-3.**

United States District Court, W. D. Missouri, W. D.

April 17, 1974.

Anthony P. Nugent, Jr., Kansas City, Mo., for plaintiff.

Lewis E. Pierce, Kansas City, Mo., for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

WILLIAM H. BECKER, Chief Judge.

By an indictment returned on October 26, 1972, defendant was charged with a violation of Section 841(a)(1), Title 21, United States Code, in that he allegedly "possessed with intent to manufacture, distribute, or dispense, a controlled, Schedule I hallucinogenic substance, to wit: marihuana."

On September 20, 1972, prior to the indictment but subsequent to his arrest and omnibus hearing, defendant filed herein his "motion to suppress eleven (11) plastic garbage disposal bags allegedly containing marihuana" because such evidence was the result of an "unlawful search."

A plenary evidentiary hearing was held on the motion to suppress on November 8, 1973, and the evidence showed the following facts.

Defendant was the sole tenant of a rented residence located at 807 Ute Street in Independence, Missouri. On September 6, 1972, at about 4:00 p. m., two police officers, Pollard and Hamon, from the Independence, Missouri Police Department arrived at the defendant's home as the result of a request by an officer of the United States Secret Service to question the defendant about a counterfeiting operation in that area. The officers were informed and on their arrival verified from the outside that the defendant's car was parked in the garage of the home. They then proceeded to the door and rang the doorbell as any member of the public might do. The ring was answered by an individual who identified himself as Billy Joe Church. Upon opening the inside door of the home, Church stepped back a few feet. Then the officers opened the outside screen door and stepped onto the inner threshold. At that point, both officers smelled and recognized a heavy scent of marihuana which permeated the inside of the house. The officers were familiar with the odor of the substance, in both its uncut and processed forms.

Approximately fifteen feet away, the officers were able to see plainly an open shoe box resting on a dining room-styled table containing a substance. The offi-

cers, familiar with the appearance of marihuana in its various forms, on sight had probable cause to believe the substance in the shoe box was marihuana. As Officer Pollard was inquiring of Church about the defendant's whereabouts, an alarming noise was heard from the basement. Officer Hamon became apprehensive, drew his revolver for protection, and proceeded to the basement stairwell area to see "who or what was down there." At the top of the stairs, Officer Hamon was unable to see into the basement. He proceeded down several stairs, however, and then saw the defendant standing in the basement, slightly to the right of the stairs. As he descended the stairs, Officer Hamon saw what he believed to be a large quantity of marihuana, stuffed in eleven plastic bags and two pillow cases. Marihuana was also found in a laundry dryer located in the basement. Subsequent tests revealed that over 150 pounds of processed marihuana were present in the basement. Both Church and the defendant were arrested for suspicion of possessing marihuana.

▇▇▇ It is undisputed that the search and seizure was without a warrant. Generally, warrantless searches are unreasonable under the Fourth Amendment unless the search is within an exception to the warrant requirement. Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930; See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943; Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856; Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514. One such exception is the "plain view" doctrine, which allows a law enforcement officer to institute a search and subsequent seizure, if the object or objects are in plain view of the officer, and if exigent circumstances justify the officer's right to be in the position from which the view is had. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 276. As

noted hereinafter a recognizable smell of contraband is the equivalent of a view under the plain view doctrine.

▇▇▇ The first question presented in this case is whether the officers had a valid and legal right to be on the threshold of the door from which the marihuana was seen in the shoe box. It has already been noted that the evidence shows without controversy that the officers were at the scene pursuant to a lawful request from the Secret Service. That agency had instructed the officers that it wished to locate the defendant for the purpose of questioning him concerning counterfeiting activity. The crucial question in this initial issue of "position to view" involves the officer's position at the threshold. As stated above, the officers outside the door rang the doorbell. It was answered by Church and immediately the officers identified themselves. Church then pulled the inner door back a few feet, remaining at that distance himself, impliedly inviting entry to the home. At this point, the officers opened the unlocked outer screen door and stepped onto the threshold to be in a position to continue their inquiry of Church concerning the defendant's whereabouts. This action by the officers was not an unlawful entry.

▇▇▇ At this point they saw marihuana in the shoe box and smelled a powerful odor of marihuana which they recognized. The evidence is undisputed that the weather was warm, the home was sealed and that the shades were drawn. The entry of the officers onto the threshold immediately inside the screen door was reasonable because the officers were not there to conduct a search for probable contraband. Rather, the officers were there on a lawful mission only to question the defendant. The defendant's car was parked in the garage and the officers had a right to assume that the defendant might be inside the home. Their purpose for entering onto the threshold was solely to continue the in-

quiry of Church about the defendant's whereabouts.

Once the officers' "right to be in the position to have that view" is established, at most it is necessary to demonstrate that the discovery of the evidence is "inadvertent." Thus, if the officers in this cause had arrived at the defendant's home with the probable cause to believe that there were 150 pounds of marihuana inside, but lacking a valid search warrant, the "plain view" of such marihuana might not justify a seizure in the absence of exceptional circumstances. But that is not the situation in the present action. The officers were there solely for the purpose of locating and questioning the defendant on a completely unrelated matter. Inadvertently on the threshold they discovered within plain view, some 15 feet away, a shoe box full of marihuana and encountered a strong smell of marihuana permeating the inside of the house. The officers were justified in their seizure of the marihuana in plain view. See Coolidge v. New Hampshire, 403 U.S. 443, 91 S. Ct. 2022, 29 L.Ed.2d 564.

The permeating smell of marihuana and the ominous noise in the basement provided probable cause for Officer Hamon to proceed to the basement for protection.

In an historical series of cases concerning smell of contraband the courts have given weight to evidence of the odor when it was demonstrated that the witnesses were familiar with it as the recognized odor of contraband. Gallaghan v. United States, 299 F. 172 (8th Cir. 1924); Rolando v. United States, 1 F.2d 110 (8th Cir. 1924); Pane v. United States, 2 F.2d 855 (8th Cir. 1924); State v. Pigg, 312 Mo. 212, 278 S.W. 1030 (1925); State v. Miller, Mo., 285 S.W. 90 (1926); State v. Stough, 318 Mo. 1198, 2 S.W.2d 767 (1928); State v. Harris, 324 Mo. 139, 22 S.W.2d 1050 (1929). In this case both officers testified that in addition to the plain view, their position on the threshold afforded them, they reasonably believed that the inside of the house was permeated with the smell of marihuana. Both men were familiar with the smell. This testimony is corroborated by the large amount of marihuana proven to be in the house (150 pounds) and the tightly closed condition of the house on a warm day. The house was without air conditioning. Thus the plain view doctrine has been expanded somewhat in the present case to include a "fresh smell" doctrine as well in respect to the marihuana in the basement.

Defendant contends in his motion to suppress that "said search was very general in nature; was for the purpose of a fishing expedition and made without consent of the defendant." Since no brief has been filed either before or after the hearing by defendant's counsel, it can only be surmised that the defendant objects to the totality of the search, and also Officer Hamon's presence in the basement.

As noted earlier Officer Hamon proceeded to the basement, with gun drawn, after both he and Officer Pollard had seen and recognized marihuana in the box on a table in front of them, had smelled a strong odor of the marihuana permeating the house and lastly, had heard an ominous noise in the basement. That noise in the basement, coupled with the physical presence and smell of marihuana and the unexplained absence of the defendant, placed the officer in circumstances warranting a reasonable apprehension of physical danger. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the Court stated:

"Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. *The officer need not be abso-*

**1376**

lutely certain that the individual is *armed*; the issue is whether *a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.*" (Terry v. Ohio, *supra* at p. 27, 88 S.Ct. at p. 1883) (Emphasis added.)

See also, Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142, 145; Brinegar v. United States, 338 U.S. 160, 174–176, 69 S.Ct. 1302, 93 L.Ed. 1879, 1889–1891; Stacey v. Emery, 97 U.S. 642, 645, 24 L.Ed. 1035, 1036.

Officer Hamon was not acting on a "hunch." He was present in a situation where marihuana was in plain sight. The strong smell indicated additional amounts of the substance might be present also. The noise from the basement, in addition to the inadvertent discovery of a crime being committed, reasonably caused Officer Hamon's apprehension and subsequent descent to the basement with his gun drawn to avoid an ambush. Once there, an additional large quantity of marihuana was in his plain view and its odor was very strong. This justified the seizure of the marihuana in the basement.

██ Defendant's witness, Billy Joe Church, contradicted the testimony of the two government witnesses. In such a situation, the burden of proof rests firmly with the government. It becomes the government's burden to demonstrate that Fourth Amendment rights have not been abused and that the search was lawfully conducted. Evidence to support the government's contentions, by necessity must come from the witnesses and identified material evidence. In the present action, the two officers who have testified have sustained that burden not only by a preponderance of the evidence but also beyond a reasonable doubt. Therefore, for the reasons stated, it is hereby

Ordered that defendant's motion to suppress be, and it hereby is, denied.