UNITED STATES of America, Plaintiff,

v.

Ray Anthony PACE, Defendant.

No. CR 88–68–SVW.

United States District Court,
C.D. California.

March 3, 1989.

950

Michael W. Fitzgerald, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff.

Jerald W. Newton, Santa Monica, Cal., for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

WILSON, District Judge.

Defendant Ray Anthony Pace ("Defendant") moves the Court pursuant to Rule 41 of the Federal Rules of Criminal Procedure to suppress cocaine recovered from his person on January 9, 1988 at the Los Angeles International Airport. Defendant contends that he was initially seized in violation of the Fourth Amendment of the United States Constitution and that the search of his person was conducted without a warrant or probable cause and does not fall within an exception to the warrant requirement. After considering the evidence presented and the parties' moving

papers, the Court DENIES Defendant's Motion to Suppress Evidence.

## BACKGROUND

On January 9, 1988, Special Agent John Marcello of the United States Drug Enforcement Administration ("DEA") and Detectives Edward Gossett and Patti May of the Los Angeles Police Department ("LAPD") were on surveillance duty at the Los Angeles International Airport. At approximately 11:25 p.m., they observed Defendant ride up an outside escalator from the street level at the United Airlines terminal to the ticket counter level. They were watching from inside the terminal at the ticket counter level at the time, and from that vantage point they could observe the outside escalator.

Defendant was carrying a small bag and looked back when he observed the three undercover officers looking at him. According to the officers, Defendant "looked defeated," like he "had been made," when he caught the eye of the officers. At about the same time, Marcello thought that he had observed, in Defendant's proximity, someone who appeared to be Ricky Ross (a.k.a. "Freeway Rick"), a known cocaine dealer. Marcello knew that Ross was often seen in the vicinity of his drug couriers.[1]

According to Marcello and Gossett,[2] Defendant walked by the United Airlines ticket counters without stopping, advancing to the internal escalator which led to the gate area. The Agents followed Defendant onto the internal escalator.

Shortly after Defendant walked off the internal escalator, the Agents approached him and walked along side of him. While walking, they displayed their credentials and identified themselves. They told Defendant that they wanted to talk with him for a few minutes but that he did not have

---

1. The significance of Ross's alleged presence is diluted in light of Gossett's unfamiliarity with Ross's appearance (he had only seen him in pictures and on one fleeting occasion months before) and Gossett's distance from Ross at the time of the alleged observation. There was no evidence of any interaction between Defendant and Ross. *See Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979) ("a

person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person").

2. Agent Marcello and Detective Gossett, when referenced together, will be referred to collectively as "Agents."

to stop to talk with them and that he was free to leave.

When Defendant stopped walking, Marcello asked him where he was going. Defendant responded that he was travelling to Chicago. When requested to produce his ticket, Defendant said that he did not have one but that there was still time for him to buy one. His flight was due to depart in less than an hour. Marcello then asked for his driver's license which Defendant produced from his bag. After returning the license to him, Marcello requested to search his bag for narcotics or large sums of money. According to Marcello and Gossett, Pace gave them permission to conduct the search. The search revealed no contraband or large sums of money.

Marcello proceeded to ask Defendant if he could pat down Defendant's outer garments. The Agents testified that Defendant said "okay" to this request. Gossett conducted the pat down search and felt two hard objects on Defendant's back. He immediately identified these objects through the Defendant's clothing as having the size and shape of two kilos of cocaine packaged in the form of "bricks."

When Gossett told Marcello that Defendant "had something on his back," Marcello told Defendant to turn around. Marcello then, instantaneously and without warning, lifted up Defendant's ski parka and sweatshirt. He found two brick-like objects on Defendant's back, concealed under a blue rubber elastic stomach support. He immediately recognized the objects he saw as cocaine by virtue of their size, shape, color, and packaging.

Defendant was subsequently arrested. After being administered the *Miranda* warnings, he confessed to being a drug courier. At the DEA office at the airport, Gossett performed a field test on some powder taken from the two objects. The powder tested positive for cocaine.

## DISCUSSION

I. *The Initial Encounter Between the Agents and Defendant*

Defendant asserts that during his initial encounter with Agent Marcello and Detective Gossett before the pat down search, he was unlawfully seized within the meaning of the Fourth Amendment. He contends that their approach, identification of themselves, and questioning constitutes a "seizure" because he did not feel free to leave.

For a seizure to occur, an officer "by means of physical force or show of authority, has [to] in some way restrain[ ] the liberty of a citizen...." *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). Law enforcement officers do not violate the Fourth Amendment "by merely approaching an individual ... in [a] public place, [or] by asking him if he is willing to answer some questions...." *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1982) (plurality); *United States v. Safirstein,* 827 F.2d 1380, 1383 (9th Cir.1987) (no "seizure" found where defendant assented to questioning by several uniformed officers in an airport). Only when, " 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave,' " will a court find that that person was seized. *Michigan v. Chesternut,* —— U.S. ——, 108 S.Ct.1975, 1979, 100 L.Ed.2d 565 (1988) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (Stewart, J.).

The Supreme Court has provided several examples of police conduct in an airport that amounted to a seizure: the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877; *see also United States v. $25,000 U.S. Currency,* 853 F.2d 1501, 1504 (9th Cir.1988).

In the present case, the Court finds that the initial encounter between Defendant and the Agents did not constitute a Fourth Amendment seizure. Unlike the officers in *United States v. Sokolow,* 831 F.2d 1413, 1416 (9th Cir.1987), *cert. grant-*

*ed*, —— U.S. ——, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988), who seized the defendant by physically grabbing him by the arm, pulling him onto the walkway, and sitting him down at the curb, the Agents did not touch Defendant. They merely identified themselves and asked him if they could speak with him for a few minutes. Moreover, this encounter occurred in public; the Agents did not block Defendant's path; they told him that he was free to leave; and they did not display weapons. The Agents' language and tone of voice did not indicate that compliance with the Agents' request might be compelled.

In a case involving an analogous encounter, the Ninth Circuit in *United States v. $25,000 U.S. Currency, supra,* held that the defendant was not seized when officers approached him at an airport and identified themselves. *Id.* at 1505. The officers in that case did not show any sign of force, display their weapons or block his path. The Ninth Circuit also found that the defendant was not seized when the officers asked him for his identification and airline ticket. *Id.* (citing *Royer,* 460 U.S. at 501, 103 S.Ct. at 1326); *see United States v. Erwin,* 803 F.2d 1505, 1506–07 (9th Cir. 1986) (initial questioning and request for identification did not violate Fourth Amendment). We conclude that the initial encounter between Defendant and the Agents, where the Agents approached and questioned Defendant, was a consensual encounter and cannot be considered a Fourth Amendment seizure.

## II. *Pat Down Search of Defendant's Person*

As a general rule, warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnote omitted). In the case at bar, it is uncontested that the Agents did not possess a search or arrest warrant at the time they patted down Defendant's outer garments and then lifted up Defendant's clothing to reveal the two cocaine bricks. The analysis turns then on whether some exception to the warrant requirement applies to this search. The Government contends that the consent exception to the warrant requirement justifies this search. While the Court finds that Gossett's pat down search of Defendant's outer clothing meets this exception, we do not find that Marcello's subsequent search of Defendant's undergarments falls within this exception. The plain view and search incident to arrest exceptions, however, justify Marcello's undergarment search. The Government need only show that the search was authorized by one of the exceptions to the warrant requirement to establish the constitutionality of its search. *See Stoner v. California,* 376 U.S. 483, 486, 84 S.Ct. 889, 891, 11 L.Ed.2d 856 (1964).

### A. *Consent Exception to Outer Garment Pat Down Search*

▇▇▇ Consent can justify a pat down search if it is given freely and voluntarily and is not the result of duress or coercion. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973). The voluntariness of Defendant's consent is to be determined by the totality of the circumstances. *Id.* at 248–49, 93 S.Ct. at 2058–59. The Government has the burden of proof on the factual issue of voluntariness. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968).

▇▇▇ Under the totality of circumstances, we determine that the Government has met its burden in proving that Defendant's consent to pat down his outer garments was given freely and voluntarily. We specifically find that when the Agents asked Defendant if he would consent to a pat down search, they did not threaten or verbally abuse him, display or draw their weapons, or use any handcuffs or other incidents of arrest. Defendant understood the Agents' request, responding "okay" when asked if the Agents could pat him down. While the Agents did not tell Defendant that he was free to decline to consent to the pat down search, the Constitution does not require "proof of knowledge of a right to refuse as

the *sine qua non* of an effective consent to a search." *Schneckloth,* 412 U.S. at 234, 93 S.Ct. at 2051. Since the question is not whether Defendant acted in his ultimate self-interest but whether his consent was voluntary, the fact that Defendant consented to a search that could disclose the narcotics he was carrying does not bear on the voluntariness of his consent. *See Mendenhall,* 446 U.S. at 559, n. 7, 100 S.Ct. at 1880, n. 7.

### B. *Consent Exception to Undergarments Search*

 Although the Court finds that Defendant consented to a pat down search of his outer garments, the Court is unconvinced that the scope of the consent included the spontaneous lifting up of Defendant's ski parka and sweatshirt under which the Agents found the bricks of cocaine. The scope of a consent search may not exceed the scope of consent given. *United States v. Dichiarinte,* 445 F.2d 126, 129 (7th Cir.1971) (citing *Honig v. United States,* 208 F.2d 916, 919 (8th Cir.1953)).

The Government avers that the scope of Defendant's consent is revealed by the purpose of the Agents' search. That purpose, it contends, was to find narcotics or large sums of money. Defendant knew of this purpose, and thus the scope of his consent included not just a probe of his outer garments but a more intrusive search of his undergarments should the exterior search create a reasonable suspicion that narcotics lay beneath his outer clothing. In the Government's view, to halt the police from searching beyond his outer clothing, Defendant would have had to expressly revoke his consent to search him. *See United States v. Homburg,* 546 F.2d 1350, 1352 (9th Cir.1976), *cert. denied,* 431 U.S. 940, 97 S.Ct. 2654, 53 L.Ed.2d 258 (1977).

While we agree with the Government that the scope of the consent given can be revealed by the purpose of the search, we find that the purpose of the search at issue was to pat down only Defendant's outer garments to uncover narcotics or large sums of money. Marcello did not ask Defendant whether he could look underneath his clothing for narcotics, but rather inquired whether he could conduct a pat down search of Defendant's *outer* garments. Consequently, when Marcello suddenly and without warning lifted up Defendant's ski parka and sweatshirt to reveal the cocaine bricks, his actions exceeded the bounds of Defendant's consent. *Cf. United States v. Smith,* 649 F.2d 305, 307 (5th Cir.1981), *cert. denied,* 460 U.S. 1068, 103 S.Ct. 1521, 75 L.Ed.2d 945 (1983) (upheld agent's search of defendant's undergarments pursuant to consent to a pat down search because, *inter alia,* the agent specifically asked the defendant whether he "would voluntarily submit to a brief patdown of his undergarments").

In the case at bar, Defendant did not consent to a complete search of all his clothing but only granted the Agents permission to touch his outer clothing. Unlike the officers in *Smith,* the Agents did not ask Defendant if they could search his undergarments as well as outer garments. Accordingly, it is unreasonable to assume that Defendant's consent can be implied to include permission for the Agent's to lift up of Defendant's parka and sweat shirt and search beneath them.

### C. *Plain View Exception to Undergarments Search*

Traditionally, courts invoke the plain view exception to the warrant requirement when an officer who was engaged in a lawful search inadvertently *saw* an object which he had probable cause to believe was contraband or evidence of a crime. The justification behind this exception is that apprehension of an object that is already in plain view of an officer lawfully present does not infringe any reasonable expectation of privacy, and "its exposure thus is not a search within the meaning of the Fourth Amendment." *United States v. Williams,* 822 F.2d 1174, 1182 (D.C.Cir. 1987); *see New York v. Class,* 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). Since in the case of contraband the nexus between the item to be seized and criminal behavior is automatically provided, *see Warden v. Hayden,* 387 U.S. 294, 87 S.Ct.

1642, 18 L.Ed.2d 782 (1967), the police are entitled to seize the contraband that is within their plain view.

The plain view exception has evolved to include senses other than the sense of sight. In *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), a plurality of the Supreme Court relied upon earlier reasoning in *Arkansas v. Sanders,* 442 U.S. 753, 764–65 n. 13, 99 S.Ct. 2586, 2593–94 n. 13, 61 L.Ed.2d 235 (1979), to acknowledge that if a container proclaims its contents by its distinctive configuration or otherwise and thus allows by its outward appearance an inference to be made of its contents, those contents are considered to be in plain view. 453 U.S. at 422–427, 101 S.Ct. at 2843–46.

The "plain hearing" exception has been recognized as a legitimate analogue to the plain view doctrine. *See United States v. Jackson,* 588 F.2d 1046, 1051–52 (5th Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979); *United States v. Fisch,* 474 F.2d 1071, 1076–78 (9th Cir.), *cert. denied,* 412 U.S. 921, 93 S.Ct. 2742, 37 L.Ed.2d 148 (1973). Under the "plain hearing" exception, if police officers overhear statements without the benefit of listening devices while they are stationed at a lawful vantage point, then those statements are admissible at trial.

Similarly, courts have accepted the "plain smell" exception as another branch of the plain view doctrine. *See United States v. Lueck,* 678 F.2d 895, 903 (11th Cir.1982) (contents of packages were inferable where, *inter alia,* the "packages reeked of marijuana"); *United States v. Pagan,* 395 F.Supp. 1052, 1061 (D.P.R.1975) (plain view doctrine has been expanded to cover that evidence that can be perceived by the sense of smell), *aff'd,* 537 F.2d 554 (1st Cir.1976); *United States v. Norman,* 701 F.2d 295, 297 (4th Cir.) (for an object to be in plain view, "it must only be obvious to the senses"), *cert. denied,* 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983); *but see United States v. Johns,* 707 F.2d 1093, 1096 (9th Cir.1983), *rev'd on other grounds,* 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985).

The question presented in the case at bar is whether Gossett's lawful touching of Defendant's back during the consensual pat down search rendered the bricks of cocaine strapped to his back underneath his clothing so apparent to Gossett as to bring them into his "plain view." For the following reasons, the Court finds that "plain view" principles encompass "plain touch" and that Gossett's actions during his pat down search of Defendant fall within the parameters of this exception to the warrant requirement.

Courts that have addressed the issue of "plain touch" have all treated "plain touch" as a corollary to the plain view doctrine. *See United States v. Portillo,* 633 F.2d 1313 (9th Cir.1980), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1764, 68 L.Ed.2d 241 (1981); *United States v. Diaz,* 577 F.2d 821, 824 (2d Cir.1978); *United States v. Ocampo,* 650 F.2d 421, 429 (2d Cir.1981); *United States v. Norman,* 701 F.2d 295, 296 (4th Cir.), *cert. denied,* 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983); *United States v. Williams,* 822 F.2d 1174 (D.C.Cir.1987); *United States v. Russell,* 655 F.2d 1261 (D.C.Cir.1981), *vacated and modified in part,* 670 F.2d 323 (D.C.Cir.), *cert. denied,* 457 U.S. 1108, 102 S.Ct. 2909, 73 L.Ed.2d 1317 (1982).

In *United States v. Portillo, supra,* an officer, while checking the nonfunctioning rear brake lights during an automobile stop of bank robbery suspects, placed his hand in the trunk of the car which happened to fall upon a paper bag. The officer instantly recognized the contents of the bag to be a gun. The Ninth Circuit found the officer's discovery of the gun lawful because "the contents of the paper bag were apparent from the outward feel of the container" and he was able to identify the contents of the bag by touching them. *Id.* at 1320.

In *United States v. Williams, supra,* an officer during an automobile stop picked up a bag which he believed to contain a weapon from the front seat of the car. The officer identified the bag's contents, through his sense of touch and training in narcotics detection, as numerous

bags of heroin. Ruling on the defendant's motion to suppress the heroin because, *inter alia*, the search did not come under the plain view exception, the Eleventh Circuit held that the plain view exception includes "plain touch" and that no warrant was needed to open a container whose contents become known through a lawful touching of the outside.[3] *Id.* at 1182–84.

The Court finds the reasoning behind these courts' decisions establishing the "plain touch" doctrine persuasive and applicable to the present case. We do not believe, contrary to Defendant's assertions, that the tactile sense is inherently less reliable than the sense of sight. When objects have a distinctive and consistent feel and shape that an officer has been trained to detect and has previous experience in detecting, then touching these objects provides the officer with the same recognition his sight would have produced. *See generally Mendenhall*, 446 U.S. at 563, 100 S.Ct. at 1882 (Powell, J., concurring) ("it is important to recall that a trained law enforcement agent may be 'able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained

observer'") (quoting *Brown v. Texas*, 443 U.S. 47, 52 n. 2, 99 S.Ct. 2637, 2641 n. 2, 61 L.Ed.2d 357 (1979)); *United States v. Moses*, 796 F.2d 281, 284 (9th Cir.1986). Cross-examination furnishes a defendant with a sufficient safeguard to determine whether the nature of the object gives rise to a credible claim of recognition[4] and whether the officer was qualified to make the detection.

The Court further does not feel that recognizing the "plain touch" doctrine will lead to any undesirable erosion of Fourth Amendment protections. We believe that the "plain touch" doctrine will be restricted to a narrow spectrum of situations where the officer was lawfully authorized to touch the container, the touching is coincidental with knowledge of the container's contents, and the officer is objectively reasonable in concluding that the container contains contraband or evidence of a crime.

Analyzing the present case under the narrow parameters of the "plain touch" doctrine, the Court finds that Gossett's actions fall under the "plain touch" exception

---

**3.** The court noted three limitations to its holding. First, the "plain touch" exception only applies "where an officer is legally authorized to touch the container in the first place." *Id.* at 1184. Second, the exception does not sanction any use of the sense of touch beyond that justified by the initial contact with the container. *Id.* In other words, knowledge of the container's contents must be coincidental with the lawful touching. *Id.* at 1184 n. 112. Third, the officer's lawful touching must convince him to a "reasonable certainty" that the container holds contraband or evidence of crime. *Id.* at 1184. The court distinguished this standard of "reasonable certainty" from the lower standard of "probable cause" usually needed in plain view seizures. The sensory information acquired by the officer must rise to a higher degree of certitude, rather than mere prediction, in regard to the object of the investigation. Moreover, the officer's level of conviction must be objectively reasonable measured in light of his past experience and training and capable of verification by a reviewing court. *Id.* at 1185.

We agree with the *Williams* court that the "plain touch" exception must be limited to cases where the officer is lawfully authorized to touch the container and where knowledge of the container's contents is coincidental with the lawful touching. The Court, however, feels that the probable cause standard, rather than any higher

degree of certitude, is appropriate when an officer can demonstrate that he was objectively reasonable in concluding that the container holds contraband or evidence of a crime. If an officer acts in an objectively reasonable manner, acting the way in which a reasonable, experienced and trained officer would perform under the circumstances, we believe that the probable cause standard sufficiently safeguards individuals' Fourth Amendment rights. Even were the Court to apply the *Williams* "reasonable certainty" standard, however, we would find that Gossett's touching of the objects on Defendant's back convinced him to a reasonable certainty that they were kilogram containers of cocaine.

**4.** Examples of where a court might conclude that the nature of an object is not susceptible to a credible claim of recognition are with small glassine envelopes which are capable of holding many different legitimate items, *see Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968), and balloons containing heroin that feel like soft bulges from the outside, *see State v. Broadnax*, 98 Wash.2d 289, 654 P.2d 96 (1982) (en banc). In the present case, a trained and experienced officer felt two distinctive brick-like objects that had the same size and feel as kilogram containers of contraband that he had felt in the past.

to the warrant requirement. First, Gossett was legally authorized to touch and pat down Defendant pursuant to Defendant's consent to the pat down search for narcotics or large sums of money. Second, Gossett's contact with the cocaine bricks was coincidental with the lawful pat down search. The Court credits his testimony that he did not merely feel two nondescript bulges on Defendant's back, but immediately identified the bulges according to their size, shape, hardness and location as bricks of cocaine in kilo size.

Third, to assess whether Gossett's tactile perception of the cocaine bricks was objectively reasonable, the Court must consider Gossett's past experience and training and the nature of the objects he touched. Gossett's experience and training in detecting narcotics included twenty-five years as a LAPD police officer, three and one half years working at the Los Angeles International Airport, over 1,000 narcotics trafficking investigations and numerous drug courier arrests. On other occasions similar to the instant one, Gossett had in the course of pat down searches felt objects on a suspect's back which approximated the same size, shape, hardness and location as the objects felt on Defendant's back. In each case, these objects had turned out to be kilo size bricks of contraband.

Furthermore, unlike the evanescent and fleeting nature of odors which has posed problems for reviewing courts trying to decide whether a "plain smell" exception applies, *see Blair v. United States*, 665 F.2d 500, 513 (4th Cir.1981) (dissenting opinion), tactile information can be preserved for trial to assure courts of an opportunity to evaluate the objects the officer claims to have triggered his sense of touch. *United States v. Williams, supra* at 1183–84 n. 105. For instance, the Court in the instant case was able to touch the cocaine bricks themselves during a recreation of the pat down search in the courtroom. The Court is satisfied that the nature, size, shape and location of the bricks are such that a reasonable detective with Gossett's past experience and training would have concluded, through touching them during a pat down search, that they were in fact

kilogram containers of contraband. Consequently, the plain touch analogue of the plain view exception applies in this case, and the Agents were justified in seizing the cocaine bricks strapped to Defendant's back.

### D. *Search Incident to Arrest Exception to Undergarments Search*

█ Alternatively, the Court finds that the search and seizure of the cocaine underneath Defendant's ski parka and sweatshirt fall under the search incident to arrest exception to the warrant requirement. Under that exception, an agent is authorized to make a search of the arrestee's person so long as the search is made incident to a lawful arrest. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The arrest is lawful if the agent has probable cause obtained independently from the fruits of the search. *Rawlings v. Kentucky*, 448 U.S. 98, 110 n. 6, 100 S.Ct. 2556, 2564 n. 6, 65 L.Ed.2d 633 (1979). "Probable cause to arrest arises when police officers have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Moses*, 796 F.2d at 283 (citation omitted).

The plain touch exception differs from the search incident to arrest exception in its use of the tactile information garnered from the contact between Gossett's hands and the cocaine bricks on Defendant's back. The plain touch exception considers this contact, incidentally occurring during a lawful consensual search conducted by a trained and experienced officer, as not constituting a search and as allowing the Agents to seize the cocaine bricks. The search incident to arrest exception views this contact as one factor, albeit a major one, to be weighed in the probable cause to arrest determination.

When Gossett felt the brick-like bulges under Defendant's clothing during the pat down search, he did not merely feel a bulge, but immediately identified the bulge according to size, shape, hardness and location as bricks of cocaine in kilo size. As

discussed above, his conclusions were solidly based upon a number of prior experiences he had had as a drug officer at the Los Angeles Airport, where in the course of a pat down search, he had felt items similar in size, shape, hardness and location to the object felt on Defendant's back. Upon inspection, those items were consistently identified as bricks of cocaine. *See United States v. Lehmann,* 798 F.2d 692 (4th Cir.1986).

In addition to Gossett's experience with and recognition of the items he touched on Defendant's back, his probable cause to arrest determination was bolstered by the circumstances leading up to the pat down search. That search did not occur randomly during the day on a city street but rather occurred after the Agents had observed a nervous male at 11:30 p.m. in the major airport of a narcotics "source city" (i.e. Los Angeles), carry only a bag, and initially respond to their glance in a manner which suggested to the trained eye that he "looked defeated" and "had been made." Defendant then walked hurriedly past the ticket counters without stopping to buy a ticket. He headed toward the gate area without a ticket less than an hour before departure. Defendant's nervousness and quickened pace to the gate area without a ticket after spotting the Agents reasonably suggests that he was trying to leave the area and their sight to avoid a confrontation. Coupled with Gossett's touching of the kilo containers of cocaine on Defendant's back, these circumstances "warrant[ed] a reasonable belief that the suspect had committed or was committing a crime" and that there was probable cause to arrest Defendant.

 The search incident to arrest exception is applicable both where the search occurs after the arrest and where the search occurs just prior to the formal charge. "[W]here the formal arrest follows quickly on the heels of the challenged search of the petitioner's person, [it is] not particularly important that the search preceded the arrest rather than vice versa...." *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d

633 (1980). A search made prior to the arrest is "incident" if it is substantially contemporaneous with the arrest itself. *United States v. Chatman,* 573 F.2d 565, 567 (9th Cir.1977) (airport interview room search based on probable cause made immediately prior to formal arrest valid).

The Court finds that the search of Defendant's undergarments was substantially contemporaneous with the subsequent arrest based on probable cause. Like the searches in *Rawlings* and *Chatman* where officers who had probable cause first searched the defendant's person and then placed him under formal arrest, the Agents arrested Defendant immediately after searching his body and finding the bricks of cocaine. Unlike the officers in *United States v. Harvey,* 701 F.2d 800, 805 (9th Cir.1983), who made a search of the defendant's person by taking a blood sample and then waited several months before they made the formal arrest, the Agents made the arrest within minutes of their search. Therefore, the search incident to arrest exception justifies the Agents' search of Defendant's undergarments.

## CONCLUSION

The Court concludes that when the Agents first approached Defendant, identified themselves, and questioned him, these actions did not amount to a seizure within the meaning of the Fourth Amendment. While the Agents had a valid consent from Defendant to conduct a pat down search of his outer clothing for narcotics, this consent did not extend to a search of Defendant's undergarments for narcotics. This undergarment search, however, is justified under the plain view and search incident to arrest exceptions to the warrant requirement.

IT IS SO ORDERED.