UNITED STATES of America, Plaintiff,

v.

Edmundo DIAZ–GARCIA, Defendant.

No. 91–0841–Cr.

United States District Court,
S.D. Florida.

Oct. 19, 1992.

Stephen J. Finta, Jr., Ft. Lauderdale, FL, for defendant.

Robert Waters, Jr., Miami, FL, for U.S.

## ORDER ON MOTION TO SUPPRESS

NESBITT, District Judge.

Upon consideration of the report and recommendation of United States Magistrate Judge Stephen T. Brown, dated June 22, 1992, a review of the transcript of the motion to suppress hearing, it is

ORDERED and ADJUDGED that the Magistrate's report is AFFIRMED. The Court agrees with the Magistrate that Deputy Ricardo Guzman properly conducted a security sweep of the Defendant's premises after arresting the Defendant on a warrant for failure to appear for incarceration following conviction, by moving suit bags in a closet to determine if anyone was hiding in the closet. However, the perimeters of the protective sweep were overstepped when Detective Guzman opened up the suit bags not knowing whether there was money or weapons in the bags.

The case of *United States v. Cruz*, 909 F.2d 422 (11th Cir.1989) relied on by the Government as a basis for reversing the

Magistrate's findings can be distinguished from the facts of the instant case.

In *Cruz*, upon detaining the Defendant in an area known for heavy drug trafficking, the arresting officer properly, out of concern for her safety, looked inside the Defendant's shoulder bag and found contraband. In the present case, the Defendant had been arrested, handcuffed and taken to the Marshal's vehicle and was no longer a threat to the security of the officers. Once Detective Guzman found no one in the closet, it was not necessary to go further and to unzip the suit bags and seize the contents in the interest of protecting the safety of the arresting officers.

Accordingly, the Magistrate's findings denying the Motion to Suppress Statements and Granting the Motion to Suppress Physical Evidence is AFFIRMED.

DONE and ORDERED in chambers, Miami, Florida this 16 day of October 1992.

## REPORT AND RECOMMENDATION

BROWN, United States Magistrate Judge.

This cause is before this court on Motions to Suppress filed by Defendant Edmundo Diaz–Garcia pursuant to an order of reference entered by the Honorable Lenore C. Nesbitt, United States District Judge. The motions seek to suppress statements and physical evidence seized from the home of the defendant at the time of his arrest. A hearing was held on these motions on June 8, 1992 and June 17, 1992.

## FACTS

The parties stipulated at the hearing to the admission of Government's Exhibit 1, which was a warrant for the defendant's arrest signed by the Honorable Sidney Aronovitz, Senior United States District Judge in 1985. The warrant stemmed from the defendant's failure to appear for incarceration following conviction.

In furtherance of the execution of that warrant, the Marshals service obtained telephone number information for the defendant in late May, 1990. After checking the number through Southern Bell, an address was obtained. Five officers proceeded to the address in the early morning hours of June 4, 1990.

The officers waited outside the home for approximately one hour, hoping that the defendant would leave for work. After that time passed, Deputy Marshal Guzman led two other officers to the front door, where he knocked, and announced "police, open the door." After a few minutes of continued knocking, the defendant's wife came to the window, looked out, saw the agents, and opened the door.

The defendant's wife stated that the defendant was not there, and when the officer asked if they could look, she replied "no". Guzman did not give her a copy of the arrest warrant, and could not recall if the woman asked for a search warrant. The officers then proceeded one or two steps into the doorway, and observed the defendant in the doorway to the bedroom. The defendant was arrested in the bedroom, handcuffed, and immediately taken to the marshal's vehicle. The defendant responded "No" to the question of whether he had any weapons or contraband.

Guzman then conducted a security sweep of the bedroom, which included looking in the closet to determine if anyone was hiding inside. When he pushed some suit bags together in the closet to insure that no one was behind them, he felt something hard inside the bags. Guzman testified that what he felt could have been anything, and that "he had no idea that it was a weapon or money." Guzman added that he was suspicious since he had personally found weapons inside suits on previous occasions. Guzman then opened the suit bags and discovered bundles of cash totalling $16,680 and three weapons.

Other than the defendant and his wife, the defendant's mother and a three year old child were present at the residence. The mother remained in the living room through the incident, while the child remained sleeping in his room.

The protective sweep began in the bedroom but continued throughout the home where anyone could be hiding. The evi-

dence presented to the court showed that the items seized consisted of the guns, money and a receipt for a firearm, all of which were found in the suit bags in the closet. The defendant was advised of his *Miranda* rights when Guzman returned to the vehicle to transport the defendant for processing.

A third deputy who took part in the initial entry into the residence also testified that the defendant's wife denied that the defendant was present, but that he could be seen by the deputies from outside the door, and that they rushed in and arrested him in the doorway to the bedroom.

The defendant testified that he lived at the home on the date of the arrest and that he was in the living room when the marshals rushed in and arrested him. The defendant denied ever being in the bedroom while the agents were there. The defendant also admitted that he was aware of the presence of the guns, money and receipt inside the suit bags.

The wife, Esperanza Escariz, testified quite differently than the marshals. She told the officers when she opened the door that the defendant was there, and in fact, he was on his way out to surrender. The marshals then pushed their way in, handcuffed the defendant and sat him down momentarily in the living room. The marshals had their guns drawn, and pointed the guns at the defendant's head. At this point the defendant told the officers that there were guns in the residence, but not where they were. The officers then immediately took the defendant out of the house to the vehicle. After he was removed, the officers began their search, beginning with the bedroom, which included the search of the suit bags. The officers spent 25 to 30 minutes searching the closet. When they were unable to find the weapons, the defendant's wife claimed that she went out to the vehicle where the defendant was being held to ask him the location, but that he could not remember where he put them. The officers also handcuffed Escariz be-

hind her back and pushed her to the floor beside the bed. She was then moved to the living room with the defendant's mother. According to her testimony, the officers searched throughout the house, and in addition to the contraband, they seized jewelry, a car radio and a car alarm.

On cross-examination, the witness acknowledged that with the exception of the first five months the defendant was a fugitive, she knew where he was.[1] As far as the arrest was concerned, she testified that she recognized Guzman as a marshal even though her earlier testimony was that she had only seen him once, five years previously. She also stated that she admitted the officers in to arrest the defendant, but not to search the residence. According to the witness, the officers were also going to handcuff the defendant's mother, and arrest both of them, but the witness told them not to because the mother was just an innocent bystander.

The facts presented by this witness are internally inconsistent and are so incredible as to not be believed by this court. The actions described by the witness would not be those taken by someone who has been associated with a fugitive for so many years, and the events described, in addition to being contrary to the officer's testimony, challenge reason and common sense. Accordingly, this court finds that this witness is not credible, and thus, adopts the facts as set forth above from the government witnesses for application to the legal issues raised in the motions.

## DISCUSSION

There are three basic legal issues faced by this court in these motions: (1) Whether the deputies were properly in the residence based on the arrest warrant; (2) Whether statements made by the defendant in response to the question of the presence of weapons were violative of *Miranda*, and (3) Whether the search and seizure of the money and weapons was proper as part of a protective sweep of the premises.

---

**1.** Deputy Marshal Guzman was involved in the search for the defendant from 1985 until the arrest. Guzman testified that he had spoken to the defendant's wife four to six times over that period, and that she always indicated that she did not know where he was.

## I. THE ARREST WARRANT

■ There is no contention in the motions that the arrest warrant for the defendant was invalid. The argument raised is that the arrest warrant was insufficient to allow for the entry into the residence since a search warrant was needed. This is incorrect.

An arrest warrant founded on probable cause carries with it the "limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980). The defendant testified that he was living at the residence where the arrest occurred, and the evidence presented at the hearing shows that the officers knew that the defendant was present when entry was made. Thus, *Payton* controls and the entry to arrest the defendant based on the arrest warrant was proper. This court would also note that the defendant's wife testified that she allowed the officers in to arrest the defendant, but not to search the premises.

## II. THE STATEMENT BY THE DEFENDANT

■ The defendant contends that his response to the question of whether there were weapons in the house should be suppressed since he was not properly advised of his *Miranda* [2] rights when the question was asked. This court notes that there is a conflict of evidence as to what the response to the question was.[3] However, the content of the response is not relevant to the present issue, which is whether the questioning violated *Miranda*. This is true even though the presence of the weapons are the focus of the charges against the defendant. *See, United States v. Sweeting*, 933 F.2d 962, 965 (11th Cir.1991) (Responses to booking questions, even if incriminatory, do not constitute interrogation under *Miranda* ).

---

**2.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** According to the government agents, the defendant responded that he had no weapons, but according to the defendant's wife, he responded that weapons were present. For purposes of the

In *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), the Supreme Court set out the "public safety exception" to *Miranda*. In *Quarles*, the defendant was apprehended in a supermarket on suspicion of rape, and a police officer, noting an empty shoulder holster worn by the defendant, asked him where the gun was. The defendant responded by pointing out the location, and stating "the gun is over there." The gun was retrieved and the defendant sought to exclude its admission and the admission of the statements based on the failure to give *Miranda* warnings. The state courts agreed with the defendant, but the United States Supreme Court reversed. In creating the public safety exception, the court noted the dangers present in protecting the public from the firearm while the rights were given. The court noted the limits of the exception, stating "We think police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect." *Id.* at 659, 104 S.Ct. at 2633.

■ In the present case, the limited questioning concerning the presence of a weapon was not investigatory in nature, but rather, was for the purpose of protecting the officers' safety. This is distinguishable from *Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), relied on by the defendant at the hearing on this motion, wherein government agents conducted vigorous interrogation concerning a shooting and whether the defendant owned a gun. *See, Quarles*, 467 U.S. at 659, n. 8, 104 S.Ct. at 2633, n. 8. *See also, United States v. Edwards*, 885 F.2d 377, 384 (7th Cir.1989).

Accordingly, it is the recommendation of this court that the motion to suppress the statements be DENIED.

---

motion to suppress the physical evidence, this court must consider the perceptions of the officers in conducting the search. Accordingly, for that purpose the court will accept the version of the facts set out by the government agents.

## III. THE PROTECTIVE SWEEP

■ The most troublesome point facing this court is the government's contention that the search and seizure of the contents of the suit bags in the closet was justified as part of a protective sweep of the premises incident to execution of the arrest warrant. This concern led this court to request a second evidentiary hearing on this matter to focus on the events which occurred during the seizure of the items from the bedroom. According to the government, the deputy properly moved the suit bags to insure that no one was hiding in the closet. When the deputy felt the objects inside the bags and became suspicious, the further search by opening the bags was proper. The defendant counters that the opening of the bags went beyond the search authorized as a protective sweep.

■ A protective sweep is permissible under the Fourth Amendment in conjunction with an in-home arrest if the searching officer possesses a reasonable belief, based on specific and articulable facts, that an individual posing a danger to those on the scene is in the area to be swept. *Maryland v. Buie*, 494 U.S. 325, 335–38, 110 S.Ct. 1093, 1099–1100, 108 L.Ed.2d 276 (1990). In *Buie, supra,* the Supreme Court defined a protective sweep as "a quick and limited search of a premises.... narrowly confined to a cursory visual inspection of those places in which a person might be hiding." 494 U.S. at 327, 110 S.Ct. at 1094. The court also held that such a search is not a full search of the premises, and lasts "no longer than is necessary to dispel the reasonable suspicion of danger, and in any event no longer than it takes to complete the arrest and depart the premises." *Id.,* 494 U.S. at 336, 110 S.Ct. at 1099. *See also, United States v. Rodgers*, 924 F.2d 219 (11th Cir.1991).

■ This court finds that Deputy Guzman acted within the scope of a protective sweep in moving the bags to determine if anyone was hiding in the closet. However, the opening of the bags went beyond the cursory inspection allowed for a protective sweep, and cannot be permitted on that basis. That, however, does not end the inquiry, since any evidence discovered in plain view during the proper scope of the protective sweep may also be seized. *United States v. Tobin*, 923 F.2d 1506, 1513 (11th Cir.1991).

■ There are three basic conditions which must be met to justify a seizure pursuant to the plain view doctrine. First, the officer must not violate the Fourth Amendment in arriving at the place from which the incriminating evidence can be plainly viewed. Secondly, the incriminating character of the evidence must be immediately apparent. Finally, the officer must have a lawful right of access to the object itself. *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

■ The plain view doctrine may only be invoked if the officers have probable cause to believe that the item viewed is evidence of a crime or is contraband. *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). Under this standard, the facts available to the officer must "warrant a man of reasonable caution in the belief" that certain items may be evidence of a crime. A "practical, non-technical" probability that incriminating evidence is involved is all that is required. *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983).

■ In the present case, the deputies did not became aware of the contraband in the suit bags from what was seen, rather, the presence of the items was discovered when Deputy Guzman felt something when he moved the suit bags to look into the closet.

■ The ultimate question thus becomes whether the principles applicable to "plain view" may be extended to "plain touch." Several circuits have recognized the "plain touch" doctrine. *See, United States v. Most*, 876 F.2d 191 (D.C.Cir.1989); *United States v. Norman*, 701 F.2d 295 (4th Cir.1983); *United States v. Ocampo*, 650 F.2d 421 (2d Cir.1981); *United States v. Portillo*, 633 F.2d 1313 (9th Cir.1980). There are no reported cases from either the

Eleventh Circuit or from the Southern District of Florida, but, the Eleventh Circuit has accepted the "plain smell" doctrine as a corollary to the plain view exception. *See, United States v. Thompson,* 928 F.2d 1060, 1065 (11th Cir.1991). Since the Eleventh Circuit has approved the use of a sense other than sight for "plain view" purposes, it is the determination of this court that the "plain touch" doctrine may also be applied in the proper case.

In *United States v. Williams,* 822 F.2d 1174 (D.C.Cir.1987), the court held that no warrant is required to open a container where the contents become known through a lawful touching of the outside. However, the court noted three limitations to the principle: (1) The plain touch exception applies only where an officer is legally authorized to touch the container in the first place; (2) Only the use of the sense of touch justified by the initial contact with the container is sanctioned, and (3) The contents cannot be deemed in plain view unless the lawful touching "convinces the officer to a reasonable certainty that the container holds contraband or evidence of a crime." *Id.* at 1184.

In commenting on the third element, the court held that a stricter standard than probable cause is required to justify the search. The court stated that probable cause, which it defined as "a predictive judgment that further investigation will yield particular results" may suffice for plain view, but that for "plain touch" seizures, the information must be enough to eliminate the need for additional search activity. The court supported this higher standard by relying on cases which held that probable cause to seize a closed container does not justify the warrantless opening of it. *But see, California v. Acevedo,* —— U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (search of containers in automobile permitted if probable cause present). *United States v. Pace,* 709 F.Supp. 948 (C.D.Cal.1989), *affirmed,* 893 F.2d 1103 (9th Cir.1990), followed *Williams* in adopting the plain touch exception, but determined that the probable cause standard was applicable and would safeguard the Fourth Amendment. Whether a higher standard than probable cause is applicable need not be reached in this case since this court finds that the probable cause standard has not been met.

The evidence presented to this court shows that while Deputy Guzman properly moved the suit bags as part of a protective sweep, the touching of the bags did not give the deputy probable cause to open them and seize the contents. The deputy candidly testified that he did not know that weapons or money were in the bags when he felt them, and that "it could have been anything." While this touching, combined with the deputy's experience in finding weapons in suits in the past may give rise to a reasonable suspicion, it does not rise to the level (probable cause) which would be required to support a warrant for the same object. In this case, the deputy did not indicate that any identifying features of the weapons or money were determined from the touching. In fact, the knowledge of the contraband did not occur until after the bags were opened and the search conducted. The "plain view" doctrine is based on the knowledge of officers obtained through the observation (by sight, smell or touch) of items which are obviously contraband. In this case, the nature of the items was certainly not obvious, and thus, the doctrine is inapplicable.

If the testimony before this court were that due to the unique feel of the object the officer knew that it was a gun or some other contraband, this court would be inclined to deny the motion to suppress. Allowing the search to be upheld in a case such as this, where there was no ability to identify the object by touch, would effectively transform the probable cause requirement into something akin to reasonable speculation. This in turn would allow for unjustified and unreasonable searches whenever an officer touched something that might arguably be a weapon, drugs or some other item of contraband. This court will not open the door for such a intrusion on the Fourth Amendment to the Constitution.

In *Arizona v. Hicks,* 480 U.S. 321, 329, 107 S.Ct. 1149, 1155, 94 L.Ed.2d 347 (1987),

Justice Scalia stated that "there is nothing new in the realization that the Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all." *Id.* at 329, 107 S.Ct. at 1155. That is the reality faced by this court in ruling on this motion. Accordingly, it is recommended that the motion to suppress physical evidence be GRANTED and that the evidence seized from the suit bags be suppressed.

### RECOMMENDATION

Based on the foregoing, it is the recommendation of this court that the Motion to Suppress Statements be DENIED, and that the Motion to Suppress Physical Evidence be GRANTED.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Lenore C. Nesbitt, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger,* 847 F.2d 745 (11th Cir.1988), *cert. denied,* 488 U.S. 958, 109 S.Ct 397, 102 L.Ed.2d 386 (1988).

DONE AND ORDERED this 22nd day of June, 1992 at Miami, Florida.